IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARSHAWN WRIGHT (#M-16699), | ) |
| Petitioner, | ) ) ) |
| v. | ) No. 18-cv-01740 ) ) Judge Andrea R. Wood |
| DAVID GOMEZ, Warden, Stateville Correctional Center, | ) ) ) ) |
| Respondent. | ) |

**MEMORANDUM OPINION AND ORDER**

Petitioner Marshawn Wright, a prisoner at Stateville Correctional Center proceeding *pro se*, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Wright challenges his 2010 conviction in Cook County, Illinois for the murder of Sean Page, arguing that the trial court failed to correct false testimony from one witness, the trial court prevented him from presenting an alibi defense, and his trial attorney was ineffective. For the reasons given below, the Court denies the § 2254 petition and declines to issue a certificate of appealability.

**BACKGROUND[1]**

**I.     Wright's Trial**

In 2010, Wright was found guilty following a jury trial of murdering Sean Page. The jury also found that Wright personally discharged the firearm that caused Page's death. *See People v.*

---

[1] This Court looks to the state appellate court decisions in Wright's direct and post-conviction appeals for the background facts. *See Wright*, 2013 IL App (1st) 103232; *People v. Wright*, 2017 IL App (1st) 141900-U (Ill. App. Ct. 2017). Neither party has submitted the trial record, which is unnecessary in this case as the Court may "take the facts from the Illinois Appellate Court's opinions because they are presumptively correct on habeas review." *Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020) (citing 28 U.S.C. § 2254(e)(1)); *see also Simental v. Matrisciano*, 363 F.3d 607, 612 (7th Cir. 2004) ("[w]hile the review of a state court transcript is occasionally necessary in habeas cases, it is certainly not required and is, in fact, quite rare;" a federal habeas court may "rely[] instead on the facts as found in the Illinois Appellate Court rulings").

*Wright*, 2013 IL App (1st) 103232, ¶ 1 (Ill. App. Ct. Mar. 1, 2013). The trial evidence, as more fully described below, included video footage of the shooting captured by a surveillance camera, several eyewitnesses identifying Wright as the shooter on the video, and a videotaped confession from Wright. *Id.* at ¶¶ 11, 16, 25.

Aukey Williams testified for the State at Wright's trial in exchange for a reduced sentence for an unrelated federal drug conviction. *Id.* at ¶ 5. He explained on the stand that he was going to receive a 30-year sentence for his participation in a heroin-distribution ring, and that the sentence was going to be reduced by three years for his testimony. *Id.*

With respect to the offense involving Wright, Williams testified that, on May 10, 2007, at around 3:00 p.m., he went to 79th Street and Langley Avenue on Chicago's southside with Mario Reeves, Maurice Williams, and Marshawn Jones to speak with a man known as "Mo" about problems with drug sales. *Id.* at ¶ 7. Mo allegedly had pretended to be Williams to sell drugs to certain individuals. *Id.* When Williams and the others arrived at the corner, Mo was on the roof of an apartment building. A "heated discussion" ensued, which led to Mo shooting at the men from the roof. *Id.* One of the men with Williams was shot in the leg, but he sought no medical attention. Instead, Williams and the others left in a car. *Id.*

Williams further testified that, while driving, Williams, Reeves, and Jones saw Page (the murder victim) and Earl Lewis walking. *Id.* at ¶ 8. Williams and the others parked nearby, exited the car, and began walking toward Page and Lewis. *Id.* Williams stayed on the north side of the street. Reeves, however, crossed the street, approached Page and Lewis, and started a fight with Lewis. *Id.* Williams then saw Wright several feet ahead of Williams. *Id.* at ¶ 9. He saw a black, nine-millimeter gun fall out of Wright's back pocket. Wright picked up the gun, put it back in his

pocket, and crossed the street to Lewis and Page. *Id.* Williams did not see Wright shoot, but he heard four to five gunshots and then saw Wright running from the scene with a gun in his hand. *Id.* Williams further testified that he spoke with Wright later that day and asked him why he did it, to which Wright replied he did not know. *Id.* at ¶ 10.

The shooting was captured on a surveillance video from a business on 79th Street, which was played at trial. *Id.* at ¶ 11. Williams identified himself, Page, Lewis, Reeves, and Wright on the video, and stated that Wright was the man on the video pointing a gun at Page. *Id.*

Lewis also testified at trial. He explained that he and Page were friends, and that he knew Wright, Williams, and Reeves from the neighborhood. *Id.* at ¶¶ 13–14. Lewis stated he was with Page in the apartment building on the corner of 79th and Langley on the afternoon of May 10, 2007. *Id.* at ¶ 14. From inside an apartment, he heard gunshots but did not know from where they came. *Id.* Later, Lewis and Page left to get cigarettes. *Id.* As they were walking on 79th, Reeves approached them, said something to Lewis, and then swung at Lewis. *Id.* at ¶ 15. Though Lewis stated that Page was next to him when Reese first swung at Lewis, he did not see what Page did while Lewis and Reeves were fighting. *Id.* Lewis heard gunshots being fired next to him but did not see who was shooting. *Id.* Lewis pulled Reeves on top of him as a shield, then pushed him away and got up. Lewis saw that Page's white t-shirt was turning red and ran from the scene. *Id.*

Lewis, like Williams, was shown the video of the shooting during his testimony. *Id.* at ¶ 16. Lewis identified himself, Page, Reeves, and Wright on the video. *Id.* at ¶ 16. Lewis further testified that, at the time of the shooting, he did not see who shot Page, but Lewis identified Wright as the man on the video pointing a gun at Page. *Id.*

Police Sergeant Johnny Tate testified at trial that, during his investigation, he spoke to Tiffany Andrews, a resident of the building where Mo shot from the rooftop. *Id.* at ¶¶ 20–21.

Andrews told Tate about the rooftop shooting and that Lewis was with Page when he was shot. *Id.* at ¶ 21. Tate interviewed Lewis, and later an individual named Pierre Young. After the interview with Young, officers began looking for Wright as a suspect. *Id.* ¶¶ 21–22.

Chicago Detective John Otto testified that he and another detective questioned Wright in an interrogation room with electronic recording. *Id.* at ¶ 23. Wright—after being advised of and waiving his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966)—confessed. *Id.* at ¶ 24. A portion of the videotaped confession was played for the jury. *Id.* The confession was not transcribed and is not in the record before this Court. But, as described by the state appellate court, Wright admitted that he, Williams, Reeves, and another man went to talk to Mo and that Mo fired shots at them from the roof. *Id.* at ¶ 25. Wright then saw Page and Lewis leave the building from where Mo was shooting, and Wright thought Mo had sent Page and Lewis out of the building. *Id.* ¶ 25. Wright, Reeves and Williams followed Page and Lewis from the opposite side of the street. *Id.* Reeves and Williams told Wright not to shoot. *Id.* But Wright stated in his confession that when Page looked at Wright and balled up his fists, "it just happened," and he fired five shots at Page. *Id.* Wright testified that the gun belonged to Page, and Wright had taken it from Page's hiding place sometime before the shooting. *Id.*

Wright testified at trial as the only defense witness. *Id.* at ¶ 27. When asked where he was on May 10, 2007, he stated that he was at his girlfriend's house in a different neighborhood. *Id.* The prosecutor objected and, during a sidebar, argued that Wright had not given the State notice of an alibi defense. *Id.* at ¶¶ 27–28. Wright's defense counsel responded that he was not calling an alibi witness and that he was only asking Wright about his whereabouts on the day of the shooting. *Id.* at ¶ 28. The trial court held that Wright's testimony about an alibi, even if he was not calling any witnesses to support it, was not allowed since he provided no notice of an alibi defense. *Id.*

4

Wright went on to testify that he was not the person in the video who shot Page. *Id.* at ¶ 29. He stated that he told officers it was him simply because it was what the officers wanted to hear. *Id.*

The jury found Wright guilty of murder and concluded that he personally discharged the firearm that caused Page's death. *Id.* at ¶ 32. He was sentenced to 50 years' imprisonment for murder and an additional 25 years for personally shooting the gun. *Id.* at ¶ 34.

**II.     Wright's Direct Appeal**

Wright argued on direct appeal that: (1) the State knowingly failed to correct false testimony from Williams when he said he was going to receive only a three-year sentence reduction for his testimony, as opposed to a 14-year reduction, which he actually received a year later; (2) the trial court impermissibly denied Wright the ability to present an alibi defense; and (3) trial counsel was ineffective for failing to (a) cross-examine Williams about his plea deal, (b) notify the State of an alibi defense, and (c) object to Sergeant Tate's hearsay testimony about his conversations with two witnesses who did not testify. *Wright*, 2013 IL App (1st) 103232, ¶¶ 39–81. The state appellate court denied these claims, *id.*, and the Illinois Supreme Court denied Wright's petition for leave to appeal ("PLA"), which argued the same claims. (Dkt. No. 10-2, at 21–42.)

**III.    Wright's Post-Conviction Proceedings**

Wright filed a post-conviction petition arguing another ground of ineffective assistance of counsel: that trial counsel failed to investigate and call as witnesses Arielle Gaines (Wright's girlfriend and alibi) and Mario Reeves, who may have testified that Wright was not the shooter in the surveillance video. (Dkt. No. 10-2 at 43–101.) The state trial court denied the petition at the first stage of review, holding that Wright had not satisfied Illinois's procedural requirement to support the claims with either affidavits from the witnesses or other evidence. (*Id.* at 111–18.) The

5

state appellate court affirmed the decision, *People v. Wright*, 2017 IL App (1st) 141900-U (Ill. App. Ct. 2017), and the state supreme court denied Wright's PLA. (Dkt. No. 10-3 at 128–58.)

**DISCUSSION**

Wright's § 2254 petition raises the following claims:

> (1) the prosecutor failed to correct Williams's testimony when he stated that he was going to receive a sentence reduction of only three, as opposed to fourteen, years in exchange for his testimony at Wright's trial;
>
> (2) the trial court denied Wright his right to present an alibi defense;
>
> (3) Wright's trial attorney was ineffective for:
>
>> (a) failing to comply with Illinois's discovery rule about notifying the State of an alibi defense;
>>
>> (b) failing to impeach Williams about the deal he made in exchange for his testimony;
>>
>> (c) failing to object to Sergeant Tate's hearsay testimony; and
>>
>> (d) failing to investigate and call Reeves and Gaines as witnesses.

None of these claims warrant federal habeas relief, however, as they are either procedurally defaulted from § 2254 review or because the state appellate court's decision denying them was neither contrary to nor an unreasonable application of federal law.

**I.    Claims 2 and 3(d) Are Procedurally Defaulted**

A § 2254 claim can be procedurally defaulted in two ways. The first occurs when a prisoner fails to exhaust fully state court remedies for his federal claim, and he no longer has the ability to do so under the state's procedural laws. *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016); 28 U.S.C. § 2254(b)(1)(A) (state prisoners must "exhaust[] the remedies available in the courts of the State" before seeking federal habeas relief). The second type of procedural default "comes from the independent and adequate state ground doctrine." *Thomas*, 822 F.3d at 384 (citing

*Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991)). "[F]ederal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman*, 501 U.S. at 729). "'A state law ground is independent when the court actually relied on the procedural bar as an independent basis for its disposition of the case.'" *Thompkins v. Pfister*, 698 F.3d 976, 986 (7th Cir. 2012) (quoted case omitted). "'A state law ground is adequate when it is a firmly established and regularly followed state practice at the time it is applied.'" *Id.*

Claims 2 and 3(d) raised in Wright's petition were both denied by the state courts on independent and adequate state law grounds. As to Claim 2—that the trial court's refusal to allow Wright to testify that he was elsewhere at the time of the shooting—the state appellate court on direct review (the last state court decision addressing the claim) determined that the claim was forfeited because Wright did not include it in his post-trial motion for a new trial. *See Wright*, 2013 IL App (1st) 103232, ¶¶ 58–68. "Illinois law requires a convicted defendant to include any and all claims of error in a post-trial motion for a new trial," and "[t]he failure to comply with this requirement amounts to a waiver of the claim." *Miranda v. Leibach*, 394 F.3d 984, 992 (7th Cir. 2005) (citing 725 ILCS 5/116–1 and *People v. Enoch*, 522 N.E.2d 1124, 1129 (Ill. 1988)). An Illinois appellate court's refusal to review the merits of a claim because it was not properly preserved in a post-trial motion for new trial is an independent and adequate state law ground preventing federal habeas review of the claim's merits. *Miranda*, 394 F.3d at 992–93;[2] *Anderson*

---

[2] The Seventh Circuit in *Miranda* recognized that Illinois courts have allowed an exception to its waiver rule when an objection was raised at trial and the issue is a constitutional one that could be raised in a state post-conviction petition. *Miranda*, 394 F.3d at 993. But Wright, like "Miranda[,] never asked the appellate court to apply that exception." *Id.* at 996; *see also* (Dkt. No. 10-1 at 43–45; Dkt. No. 10-2 at 10–14).

7

*v. Lashbrook*, No. 17 C 08350, 2020 WL 5251615, at *7 (N.D. Ill. Sept. 3, 2020). Claim Two is thus procedurally defaulted.

Claim 3(d)—that Wright's trial attorney was ineffective for failing to investigate whether to call Gaines and Reeves as trial witnesses—was dismissed by the Illinois courts because Wright "failed to attach the purported witnesses' affidavits to support the allegations in his petition or sufficiently explain their absence." *Wright*, 2017 IL App (1st) 141900-U, ¶ 36 (citing 725 ILCS 5/122-2). In Illinois, a post-conviction "petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." § 5/122-2. "Illinois courts regularly enforce the affidavit rule," and the denial of claims based on the rule is an adequate state procedural ground independent of the claims' merits. *Jones v. Calloway*, 842 F.3d 454, 461 (7th Cir. 2016); *Thompkins*, 698 F.3d at 986–87; *see also Illinois v. Collins*, 782 N.E.2d 195, 198 (Ill. 2002).

Wright argues that the state courts erred in their application of § 122-2 because his post-conviction petition included his own affidavit explaining that his incarceration prevented him from obtaining affidavits from Gaines and Reeves. (Dkt. No. 14 at 3–6.) When conducting federal habeas review, however, this Court does not reexamine a state court's application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Only "when the application [of a state rule] is so surprising, unanticipated, unprecedented, unforeseeable, and indeed freakish as not to be foreseeable by the petitioner, [will] its existence . . . not block [a petitioner] from pressing his federal claims in his federal habeas corpus proceeding." *Smith v. Winters*, 337 F.3d 935, 937 (7th Cir. 2003); *see also Brown v. Hodge*, No. 11 C 1281, 2012 WL 5269266, at *7 (N.D. Ill. Oct. 22, 2012). The state appellate court's application of § 122-2 was not so irregular or "freakish" as

to avoid the independent and adequate state ground bar. Therefore, Claim 3(d) is procedurally defaulted as well.

Because the claims are defaulted, Wright may only obtain federal habeas review of Claims 2 and 3(d) if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law" or that "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *see also House v. Bell*, 547 U.S. 518, 536 (2006). Wright argues neither exception. Claims 2 and 3(d) are thus procedurally defaulted and denied.

## II. Wright's Other Claims Warrant No Federal Habeas Relief Under § 2254(d)'s Deferential Standard of Review

Wright's other claims—Claims 1, 3(a), 3(b), and 3(c)—were denied on the merits by the Illinois appellate court. *See Wright*, 2013 IL App (1st) 103232. This Court's review of those claims is thus governed by § 2254(d)'s deferential standard of review. Federal habeas relief is unavailable "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d). Here, the state court's adjudication of Claims 1 and 3(a)-(c) was neither contrary to, nor an unreasonable application of, clearly established federal law; nor did it involve unreasonable determinations of fact based on the record.

### A. Claim 1

Wright's Claim One—that the State failed to correct known perjured testimony from Williams about the deal he made for his testimony—was addressed by the state appellate court on direct appeal. At trial, Williams testified he was subject to a 30-year sentence for a federal heroin distribution offense. *Wright*, 2013 IL App (1st) 103232, ¶ 39. That sentence, according to Williams's testimony, was going to be reduced by three years in exchange for his testimony. *Id.* His federal plea agreement, which existed at the time of Wright's trial, stated that, if the Government moved to reduce his sentence based on his cooperation, "the sentence imposed by the [Federal] Court shall . . . [be] 60 percent of the low end of the applicable guidelines range or 60 percent of the statutory minimum sentence, whichever is greater." *Wright*, 2013 IL App (1st) 103232, ¶ 41.

The parties addressed this issue at a post-trial hearing. *Id.* at ¶ 48. Wright argued that, pursuant to the plea agreement, Williams was going to receive a sentence of 16 years' imprisonment, which would be further reduced by three years for his testimony. *Id.* The prosecutor stated that, "when preparing for trial, Williams told her he was going to receive a sentence of 30 years and '[t]here was nothing within [her] knowledge that would be any different than that.'" *Id.* at ¶ 48 (quoting the post-trial hearing transcript). Wright's attorney responded "that he had 'no doubt in [his] mind [the prosecutor] . . . did not purposely do anything.'" *Id.* (quoting post-trial hearing transcript). On direct appeal, however, Wright argued that "[t]he prosecutor's protestations of ignorance lack[ed] credibility." *Id.* at ¶ 48.

A prosecutor has "'a constitutional obligation to report to the defendant and to the trial court whenever government witnesses lie under oath.'" *Long v. Pfister*, 874 F.3d 544, 547 (7th Cir. 2017) (en banc) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)) (citing *Napue v.*

*Illinois*, 360 U.S. 264, 269–72 (1959)). "[D]ue-process rights are violated when the government obtains a conviction through the knowing use of false testimony." *United States v. Hilliard*, 851 F.3d 768, 782 (7th Cir. 2017) (citing *Napue*, 360 U.S. at 269). This principle applies, even when "the false testimony goes only to the credibility of the witness." *Napue*, 360 U.S. at 269. "Under *Napue*, a petitioner must show that: 1) the prosecution's case included perjured testimony; 2) the prosecution knew, or should have known, of the perjury; and 3) there is any likelihood that the false testimony could have affected the judgment of the jury." *Ashburn v. Korte*, 761 F.3d 741, 757 (7th Cir. 2014) (internal quotation marks and citation omitted). The state appellate court in Wright's case determined both that the prosecutor did not knowingly allow false testimony and that the uncorrected testimony did not affect the jury's verdict. *Wright*, 2013 IL App (1st) 103232, ¶¶ 48-53. Neither determination was unreasonable.

With respect to whether the prosecutor knew Williams's testimony was false, the state appellate court noted that neither the prosecutor's nor defense counsel's projection as to Williams' sentence was correct and "that neither attorney could have definitively stated what Williams'[s] sentence would be at that time because he was not sentenced until a year" later. *Id.* at ¶ 50. The state appellate court further noted defense counsel's comment at the post-trial hearing that he did not doubt the prosecutor when she said "she believed Williams' sentence would be 30 years." *Id.* The state appellate court found that "there is nothing in the record to show that the prosecutor at trial knew that Williams'[s] testimony about his anticipated sentence was false," and concluded that the State had no obligation to correct testimony it did not know was false. *Id.*

Although the post-trial hearing transcript is not in the record before this Court, Wright challenges none of the state appellate court's findings described above, which have a presumption of correctness, *see Hartsfield*, 949 F.3d at 309 n.1 (citing § 2254(e)(1)), and which were based on

the transcript. This Court cannot conclude that the state appellate court's finding—that the prosecutor did not believe Williams's testimony was false—was unreasonable. *Corcoran v. Neal*, 783 F.3d 676, 683 (7th Cir. 2015) ("Unreasonable [in the context of § 2254(d)] means more than just incorrect; it means something . . . lying well outside the boundaries of permissible differences of opinion.") (internal quotation marks and citation omitted). Upon finding no knowledge of perjured testimony, the state appellate court was correct to deny Wright's claim. *United States v. Are*, 590 F.3d 499, 509 (7th Cir. 2009) (no due process violation occurred when a prosecutor did not know testimony was false).

The state appellate court additionally held that Wright was not prejudiced. "The jury was aware of Williams'[s] multiple prior convictions[; ] that he entered into a plea agreement in an unrelated federal case[;] . . . that when Williams first gave information to the police about the shooting, he had not received any consideration from anyone[; and] . . . that Williams was to receive a sentence reduction of three years." *Wright*, 2013 IL App (1st) 103232, ¶ 52. "The possibility that the government in the federal case could move to reduce the sentence further," concluded the state court, "would not have affected the outcome when the jury was already aware of the State's request for leniency related to defendant's trial." *Id.* The state appellate court also noted the strength of the evidence against Wright apart from Williams' testimony—the surveillance video, Lewis's testimony, Wright's confession. *Wright*, 2013 IL App (1st) 103232, ¶ 53. The state court concluded that, even if Williams's testimony about the benefit he was going receive was false and the prosecutor knew it, the "false testimony . . . did not contribute to the jury's verdict." *Id.*

The state appellate court's determination was not unreasonable. *See Braun v. Powell*, 227 F.3d 908, 921 (7th Cir. 2000) (where "the jury was aware that [a witness] had a specific incentive

to testify . . . in the hope of . . . reducing his sentence," full information about the amount of the reduction was not considered material under *Napue*). Even though courts employ "a strict standard of materiality, not just because they involve prosecutorial misconduct, but more importantly because they involve a corruption of the truth-seeking function of the trial process," *United States v. Agurs*, 427 U.S. 97, 104 (1976), it was clear to Wright's jury that Williams was receiving a benefit for his testimony. Considering such knowledge by the jury and the abundance of evidence of Wright's guilt, he cannot establish that, had the jury known the extent of Williams's sentence reduction, there was "any likelihood that the false testimony could have affected the judgment." *Ashburn*, 761 F.3d at 757. Claim One is without merit and denied.

### B. Claim 3

Wright argues that his trial attorney was ineffective for: (a) failing to comply with Illinois's discovery rule about notifying the State of an alibi defense; (b) failing to impeach Williams about the sentence reduction he was going to receive for his testimony; (c) failing to object to Sergeant Tate's hearsay testimony; and (d) failing to investigate and call Reeves and Gaines as trial witnesses. As previously discussed, Wright's claim about his attorney not calling Reeves and Gaines is procedurally defaulted, and Wright satisfies neither exception that would allow a merits review of the claim. As to the other grounds, the state appellate court's denial of the claims in Wright's direct appeal was neither contrary to federal law nor unreasonable.

The state appellate court cited the correct legal standard. To establish a Sixth Amendment violation of ineffective assistance of counsel, stated the state appellate court, "a defendant must demonstrate that counsel's performance was deficient and that such deficient performance substantially prejudiced defendant." *Wright*, 2013 IL App (1st) 103232, ¶ 55 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The state appellate court further correctly noted that a

defendant "must overcome the presumption that . . . challenged conduct might be considered sound trial strategy under the circumstances," and must demonstrate "a reasonable probability that," but for his attorney's deficient performance, "the result of the proceeding would have been different." *Wright*, 2013 IL App (1st) 103232, ¶ 70; *see also Strickland*, 466 U.S. at 668, 689–90, 694.

### 1. Claim 3(a)

Wright argues that his trial attorney was ineffective when he failed to give proper notice of an alibi defense. (Dkt. No. 1 at 7, 20–34.) Addressing only *Strickland*'s prejudice prong, the state appellate court determined that, even if Wright had been allowed to testify about an alibi, such testimony would not have resulted in a reasonable probability of a different result. *Wright*, 2013 IL App (1st) 103232, ¶ 71. As the state appellate court explained:

> The jury heard testimony from two witnesses [Aukey Williams and Earl Lewis] who identified defendant as the shooter in the surveillance video. Williams testified that he saw defendant with a gun before and after the shooting, but did not see defendant fire the weapon. Defendant confessed to the crime and identified himself as the shooter and detailed his commission of the crime. The jury was also able to view the video which corroborated the testimony of the witnesses. Given the overwhelming evidence of his guilt, defendant cannot show a reasonable probability that the result of the proceeding would have been different if his alibi testimony had been admitted as evidence.

*Id.* Addressing only *Strickland*'s prejudice prong is perfectly acceptable. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697.

To establish a reasonable probability, Wright must show "'a probability sufficient to undermine confidence in the outcome.'" *Blackmon v. Williams*, 823 F.3d 1088, 1105 (7th Cir. 2016) (citations omitted). When assessing prejudice, a court must consider the evidence that would have been presented at trial but for an attorneys' deficient performance along with the "the totality of the evidence before the . . . jury." *Strickland*, 466 U.S. at 695; *Blackmon*, 823 F.3d at 1106–07.

14

Given the wealth of evidence against Wright described above, the state court's determination of no *Strickland* prejudice was not unreasonable. As previously noted, "[u]nreasonable [for § 2254(d)] means more than just incorrect; it means something . . . lying well outside the boundaries of permissible differences of opinion." *Corcoran*, 783 F.3d at 683 (internal quotation marks and citation omitted). Claim 3(a) is denied.

### 2. Claim 3(b)

Wright argues his trial attorney was ineffective for failing to impeach Williams's testimony by revealing the significant sentence reduction he was going to receive for his testimony. (Dkt. No. 1 at 7.) Wright asserts: "Trial counsel was in possession of Aukey Williams'[s] plea agreement with the federal government, yet counsel acknowledged he was unaware of its terms until closing argument. Counsel had a duty to investigate the background of Williams . . . [who] was a key witness." *Id.*

The state appellate court on direct review determined Wright could establish neither deficient performance nor prejudice. With respect to the deficient performance prong, the state court noted that Williams was not sentenced until a year after Wright's trial; that a month before Williams's sentencing, a federal prosecutor recommended a 30-year sentence; and that Wright's trial attorney stated at a pretrial hearing he did not want to delve into the details of Williams's plea agreement because it would have involved a discussion of Williams's federal heroin-distribution offense, in which Wright played a major role. *Wright*, 2013 IL App (1st) 103232, ¶ 57.

Wright argues that his attorney's failure to question Williams about his deal could not be considered trial strategy since the attorney stated during the post-trial hearing that he would have questioned Williams about the deal had he known the extent of the sentence reduction. (Dkt. No. 1 at 7.) Wright, however, does not challenge the fact that the attorney informed the trial court

before trial that he did not intend to ask Williams about his federal offense in order to avoid testimony about Wright's involvement in that offense. *Id.* Nor does Wright challenge the state appellate court's finding that neither party knew at the time of trial the extent of the sentence reduction Williams was going to receive. *Id.*; *Wright*, 2013 IL App (1st) 103232, ¶ 57. Given the attorney's pretrial comments and neither attorney's knowledge about the extent of Williams's deal at the time of Wright's trial, the state appellate court's determination of no deficient performance was reasonable. *See Corcoran*, 783 F.3d at 683.

With respect to the prejudice prong, the state appellate court determined that the same reasons demonstrating no materiality for Wright's claim that the prosecution used perjured testimony, *i.e.*, that the jury was informed about Williams's conviction, his deal with federal prosecutors for a reduced sentence in exchange for his testimony, and his pre-deal statements about Wright's shooting of Page, demonstrated no prejudice for Wright's ineffective assistance of counsel claim. *Id.* at ¶ 56. The prejudice standard for an ineffective assistance claim—a reasonable probability of a different result—differs from the materiality standard for a claim of knowing use of perjured testimony—any likelihood that the false testimony could have affected the verdict. *Compare Strickland*, 466 U.S. at 694–95, with *Napue*, 360 U.S. at 269–72. But the same evidence described above that supports no *Napue* materiality also supports the conclusion of no *Strickland* prejudice. The state appellate court's decision was neither contrary to, nor an unreasonable application of, federal law; nor was it an unreasonable determination of facts based on the evidence. *See* § 2254(d). Claim 3(b) lacks merit and is denied.

### 3. Claim 3(c)

Wright also argues that his attorney was ineffective for failing to object to hearsay testimony from Sergeant Johnny Tate concerning his conversations with Tyfanny Andrews and

16

Pierre Young. (Dkt. No. 1 at 8.) At trial, Tate testified that Andrews told him during a telephone conversation that she lived at the building where someone was shooting from the roof, which occurred sometime before she saw Lewis and Page together prior to the second shooting. *See Wright*, 2013 IL App (1st) 103232, ¶ 21. Tate also testified that, after he spoke with Young, Tate began looking for Wright as a suspect, as well as Williams and Reeves. *Id.* at ¶ 22. Wright raised these ineffective assistance grounds on direct appeal, which the state appellate court denied. *Id.* at ¶¶ 72-78.

### a. *Tate's Testimony about Andrews' Statements*

With respect to Tate's testimony about what Andrews told him, the state appellate court considered the testimony to be hearsay. *Wright*, 2013 IL App (1st) 103232, ¶¶ 72–73 (under Illinois's hearsay rules, an "officer may testify that [he] had a conversation with an individual and that [he] subsequently acted on the information received," but "the officer cannot testify as to the substance of [his] conversation with the individual") (quoting *People v. Mims*, 934 N.E.2d 666, 678 (Ill. 2010) (citations omitted)). The state appellate court determined, however, that Wright's attorney likely chose not to object, and that in any case Wright was not prejudiced. *Wright*, 2013 IL App (1st) 103232, ¶¶ 76–77.

The state appellate court's determination of no prejudice was not unreasonable. Tate's testimony that Andrews informed him about the roof shooting and about seeing Lewis and Page together outside shortly before the second shooting provided information already known to the jury through Williams's and Lewis's testimony. *See Wright*, 2013 IL App (1st) 103232, ¶¶ 7–9, 14–16. Furthermore, Tate's testimony about Andrew's statements did not place Wright at the scene of either shooting. *Id.* at ¶ 77 Wright cannot establish that, but for his attorney's failure to object to Tate's testimony about his conversation with Andrews, a reasonable probability existed that the

17

trial would have resulted differently. *See Strickland*, 466 U.S. at 694–96.[3] This ineffective assistance claim warrants no § 2254 relief and is denied.

### b. *Tate's Testimony about Young's Statements*

Furthermore, Wright cannot establish that his attorney was ineffective for failing to object to Tate's testimony about Young's statements because, as determined by the state appellate court, those statements were not hearsay. *Wright*, 2013 IL App (1st) 103232, ¶ 78. Tate did not testify about the substance of his conversation with Young. Instead, he testified that, after talking to Young, he began looking for Wright as a suspect and wanted to speak to Williams and Lewis. *Id*. "[P]olice officers may testify about the course of their investigation, but cannot reveal the substance of a conversation." *Wright*, 2013 IL App (1st) 103232, ¶ 78; *see also Estelle*, 502 U.S. at 67–68 (federal habeas courts do not usually reexamine a state court's determination of state law). Tate's testimony about his conversation with Young was not hearsay, and Wright cannot demonstrate ineffective assistance of counsel based on his attorney's failure to object to such testimony. *See Carter v. Douma*, 796 F.3d 726, 735 (7th Cir. 2015) (an attorney's performance is not deficient for not making a futile objection); *Martin v. Evans*, 384 F.3d 848, 852 (7th Cir. 2004) (when the underlying claim is meritless, there is not reasonable probability of a different outcome absent the failure to raise it). For these reasons, Claim 3(c) is without merit and denied.

***

---

[3] As to the deficient performance prong, the state appellate court may be correct that Wright's attorney chose not to object to Tate's testimony about Andrew's statements because those statements did not mention Wright and because the attorney did not want to call attention to the roof shooting, at which no witnesses testified Wright was present. *Wright*, 2013 IL App (1st) 103232, ¶ 76. But the state appellate court cited no evidence to support this finding. Wright, however, does not argue that this finding was incorrect or unreasonable, *see* Dkt. Nos. 1 and 14, and more importantly, he cannot establish the prejudice prong of this *Strickland* claim for the reasons stated previously.

This Court lastly notes, as the state court did on direct appeal, that considering the cumulative effect of trial counsel's alleged errors does not alter the decision of no *Strickland* prejudice. When a "record shows more than one instance of deficient performance, the Sixth Amendment requires [a court to] approach the prejudice inquiry by focusing on the cumulative effect of trial counsel's shortcomings." *Myers v. Neal*, 975 F.3d 611, 623 (7th Cir. 2020). As previously noted, the evidence against Wright was overwhelming. Two people, Williams and Lewis, who were present when Page was shot identified Wright as the shooter on a surveillance video at trial. Also, Wright himself confessed to the shooting, not only to officers in a videotaped statement played for the jury but also to Williams when talking to him on the phone shortly after the shooting. *See Wright*, 2013 IL App (1st) 103232, ¶¶ 6–25. Even considering the cumulative effective of the trial attorney's alleged errors, Wright cannot establish prejudice, and the state appellate court's determination of no cumulative-effect prejudice was reasonable.

## CONCLUSION

For all the reasons stated above, this Court cannot grant federal habeas relief for any of Wright's claims. His § 2254 petition is therefore denied. Any other pending motions are denied as moot. The denial of Wright's petition is a final decision ending this case. If he seeks to appeal, he must file a notice of appeal in this Court within 30 days of when judgment is entered. Fed. R. App. P. 4(a)(1). He need not bring a motion to reconsider to preserve his appellate rights, but if he wishes the Court to reconsider its judgment, he may file a motion in accordance with Federal Rules of Civil Procedure 59(e) or 60(b). A Rule 59(e) motion must be filed within 28 days of entry of judgment and suspends the deadline for filing an appeal until the motion is ruled on. *See* Rule 59(e) and Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than

one year after entry of judgment. *See* Rule 60(c)(1). A Rule 60(b) motion suspends the deadline for filing an appeal until the motion is ruled on only if the motion is filed within 28 days of the judgment. Fed. R. App. P. 4(a)(4)(A)(vi). The time to file a Rule 59(e) or 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). Finally, the Court declines to issue a certificate of appealability. *See* Rule 11 of the Rules Governing § 2254 Cases. Wright cannot make a substantial showing of the denial of a constitutional right and cannot show that reasonable jurists would debate, much less disagree, with this Court's resolution of his claims. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

ENTERED:

_____
Andrea R. Wood
United States District Judge

Date: April 30, 2021